# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| THE TAKARA TRUST, Individually and on Behalf of All Others Similarly Situated, ) ) Plaintiff, ) ) v. ) ) MOLEX INCORPORATED, et al., ) ) Defendants. ) | No. 05-C-1245 Judge Ruben Castillo |

## MEMORANDUM OPINION AND ORDER

Between March 2, 2005 and April 22, 2005, seven separate class actions were filed in this District against Defendant Molex Incorporated ("Molex"), alleging that Molex violated certain sections of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a-78nn ("Exchange Act") and Securities and Exchange Commission ("SEC") rules. This Court consolidated these actions on March 29, 2005 and May 17, 2005.[1] (R. 14, 3/29/05 Order; R. 34, 5/17/05 Order.) This decision addresses the four pending motions for appointment as lead plaintiff of the consolidated action pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, and approval of lead plaintiff's choice of lead counsel. The four pending motions were filed by City of Pontiac General Employees' Retirement System, Joan L. Weeks, individually and as trustee, and James Baker (the "City of Pontiac Group"); Robert E. Ponzo, Gerard S. Abraham,

---

[1] On March 29, 2005 this Court consolidated the following cases in this action: *BDM, LLC v. Molex Incorporated*, case number 05 C 1372; *Drywall Acoustic Lathing and Insulation Local 675 Pension Fund v. Molex Incorporated*, case number 05 C 1461; and *Baker v. Molex Incorporated*, case number 05 C 1467. On May 17, 2005 this Court consolidated the following cases in this action: *Jorgenson v. Molex Incorporated*, case number 05 C 1851; *Quade v. Molex Incorporated*, case number 05 C 2301; and *Lewis v. Molex Incorporated*, case number 05 C 2399.

and Brent Jorgensen (the "Ponzo Group"); Leo J. Johnson, William E. Barron, and Barbara M. Lewis (the "Johnson Group"); and Drywall Acoustic Lathing and Insulation Local 675 Pension Fund ("DALI"). For the reasons set forth below, we grant the City of Pontiac Group's motion, (R. 28-1), and deny the remaining motions, (R. 18-1; R. 22-1; R. 29-1).

## LEGAL STANDARDS

The PLSRA sets forth the procedure through which the Court may appoint the lead plaintiff in any private action arising under the Exchange Act that is filed as a class action under the Federal Rules of Civil Procedure. *See* 15 U.S.C. §§ 78u-4(a)(1)-(3). Within twenty days after the complaint is filed, the plaintiffs must publish in a widely-circulated business publication a notice that advises members of the purported class that they may move to serve as lead plaintiff within 60 days of the date on which the notice is published. *Id.* § 78u-4(a)(3)(A)(i). Where more than one class action is consolidated, "the court shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions[.]" *Id.* § 78u-4(a)(3)(B)(ii). The PLSRA sets up a rebuttable presumption that the most adequate plaintiff is the person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u-4(a)(3)(B)(iii)(I). This presumption may be rebutted if there is proof that the presumptively most adequate lead plaintiff either will not fairly and adequately protect the class's interests or is subject to some unique defense that renders the lead plaintiff incapable of adequately representing the class. *Id.* § 78u-4(a)(3)(B)(iii)(II).

2

## ANALYSIS

A notice of the pendency of this class action was published on March 2, 2005 in *PR Newswire*. (R. 32, Pontiac Group Mem., Ex. A, Notice of Pendency of Class Action). On May 2, 2005, all four of the current movants—which are groups of members of the purported class—filed timely motions seeking appointment as lead plaintiff and approval of their choice of lead plaintiff. (R. 18-1; R. 22-1; R. 28-1; R. 29-1.) Thus, all of the movants met the first of the lead plaintiff requirements. 25 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa). Our task is now to determine which of the four moving parties has the largest financial interest in the relief sought by the class and otherwise fulfills the requirements of Federal Rule of Civil Procedure 23. *Id.* § 78u-4(a)(3)(B)(ii)(I)(bb)-(cc).

### I. Largest Financial Interest in the Relief Sought by the Class

While the PSLRA does not specify how we should decide which plaintiff group has the "largest financial interest" in the relief sought, most courts simply determine which potential lead plaintiff has suffered the greatest total losses. *See In re Bally Total Fitness Sec. Litig.*, No. 04 C 4697, 2005 WL 627960, at *4 (N.D. Ill. Mar. 15, 2005). The moving parties represent their financial interest in the relief sought as follows:

| Moving Party | Number of Shares Purchased | Losses Sustained |
|---|---|---|
| The Johnson Group | 1,300 | $1,958.05 |
| DALI[2] | 2,800 | $7,739.20 |
| The Ponzo Group | 4,900 | $12,273.00 |
| The Pontiac Group | 10,396 | $17,917.14 |

---

[2]Though the Pontiac Group indicated in its response brief that DALI intends to withdraw its motion for appointment as lead plaintiff, DALI has not filed a withdrawal with the Court. (R. 38, Pontiac Group Resp. at 1 n.1.)

Based on these representations, it is clear that the Pontiac Group has the largest financial interest in the compensatory damages sought by the class, and therefore will be the presumptive lead plaintiff under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) as long as it meets the requirements of Rule 23.

The Ponzo Group attempts to muddy these otherwise clear waters by arguing that it should be appointed as co-lead plaintiff to represent a sub-class of the purported class members consisting of holders of Molex Common Stock.[3] (R. 36, Ponzo Group Resp. at 3.) The Ponzo Group does not dispute that the Pontiac Group has suffered the largest overall losses. Instead, it argues that the Ponzo Group should represent the Common Stock shareholders because it suffered $12,273 in losses from its purchase of Common Stock while the Pontiac Group only suffered $5,450 in losses from its purchase of Common Stock. (*Id.* at 2.) The remainder of the Pontiac Group's losses stemmed from its purchase of Class A Shares. (*Id.*)

We find that the Ponzo Group's request to slice and dice the reported losses between Common Stock and Class A Shares departs from the presumption laid out in the PLSRA. The test is which group of persons "has the largest financial interest in the relief sought by the class." 15 U.S.C. 78u-4(a)(3)(B)(iii)(I)(bb). The Ponzo Group has pointed to nothing in the pleadings which would suggest that any of the relief sought by Common Stock holders is different than the relief sought by Class A shareholders. The relief sought by the class here is compensation for losses sustained from investment in Molex securities. (R. 1, Compl. ¶¶ 17, 60(a-d).) The Pontiac Group has the largest financial interest in that relief. As a result, it is the presumptive lead plaintiff under § 78u-4(a)(3)(B)(iii)(I)(bb).

---

[3]During the class period, Molex had three distinct classes of stock: Common Stock, Class A Shares, and Class B Shares. (R. 36, Ponzo Group Resp., Ex. A, Molex Schedule 14A.)

## II. Rule 23: Typicality and Adequacy

The PLSRA also requires us to consider whether the Pontiac Group would satisfy the requirements for class action certification under Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Only two of the Rule 23 requirements pertain to representative plaintiffs: typicality and adequacy. A lead plaintiff meets the typicality requirement if its "claims or defenses . . . are typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3). A lead plaintiff's claims can be considered typical if they arise out of the "same event or practice or course of conduct that gives rise to the claims of other class members and . . . [its] claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (quotation omitted). A lead plaintiff meets the adequacy requirement if it "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is met if the lead plaintiff is represented by adequate counsel and has no claims that conflict with or are antagonistic to the class. *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 598 (7th Cir. 1993).

The Pontiac Group meets both the typicality and adequacy requirements of Rule 23. Its claims are typical of—if not identical to—the claims of the class as a whole. Like the purported class members, the Pontiac Group claims it sustained losses from Molex's misrepresentations and inflations of stock value, and these claims arise under the same theory that Molex's course of conduct violated federal securities laws. The Ponzo Group has not challenged—nor have we any reason to doubt the adequacy of the Pontiac Group's chosen counsel, Lerach Coughlin. We have reviewed Lerach Coughlin's resume and noted its involvement in numerous securities and fraud

class actions.[4] (*See* R. 32, City of Pontiac Mem., Ex. D, Lerach Coughlin Stoia Geller Rudman & Robbins LLP Resume.)

The Ponzo Group does challenge, however, the Pontiac Group's ability to represent the class without conflict of interest. They argue that the Pontiac Group will not adequately represent Common Stock holders because the majority of its financial losses stem from Class A Shares. (R. 36, Ponzo Group Resp. at 5-9.) According to the Ponzo Group, this distinction is significant because while Class A shareholders have no voting rights, Common Stock shareholders are entitled to one vote per share on matters submitted to shareholder votes. (*Id.* at 5 & Ex. A, Molex Schedule 14A.) As a result, the Ponzo Group argues that Class A shareholders will have no incentive to demand corporate governance reforms in any settlement scenario because unlike Common Stock holders, "they will not be able to exercise the direct responsibilities of implementing the reforms." (*Id.* at 6.) We disagree. First, it is not uncommon for a representative who purchased one type of security to represent class members who purchased a different type of security where the action is based on the same set of misrepresentations. *See Endo v. Albertine*, 147 F.R.D. 164, 167-68 (N.D. Ill. 1993). Second, the Pontiac Group consists of one institutional investor that purchased Class A Shares and two individual investors who purchased Common Stock. (*See* R. 32, City of Pontiac Mem., Ex. C, Chart of Purchases and Losses.) The cases cited by the Ponzo Group that stand for the proposition that a representative plaintiff must be a member of the class it seeks to represent are thus inapposite. (R. 36, Ponzo Group Resp. at 8-9.) More importantly, the presence of Common

---

[4]Lerach Coughlin's appointment as lead counsel in the landmark Enron case is especially notable. *In re Enron Corp., Sec. Litig.*, 206 F.R.D. 427 (S.D. Tex. 2002).

Stock holders within the Pontiac Group provides it with an incentive to advocate for corporate governance changes.

The Ponzo Group has pointed to no other possible conflict of interest, nor have we discerned any. As a result, we find that the Pontiac Group meets the adequacy requirements of Rule 23. While we recognize our discretion to appoint co-lead plaintiffs in the right circumstances, those circumstances do not exist here. The appointment of co-lead plaintiffs in this case would not cure any inadequacy of representation, but it could lead to substantial inefficiencies from over-lapping attorney work. It could also harm the class by creating unnecessary costs. Because the Pontiac Group has the largest financial interest in the relief sought by the class in this case and meets the requirements of Rule 23(a), we grant its motion for appointment as sole lead plaintiff. (R. 28-1.)

## III. Approval of Lead Plaintiff's Choice of Lead Counsel

The PLSRA states that the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C.§ 78u-4(a)(3)(B)(v). The Pontiac Group has selected Lerach Coughlin to serve as lead counsel and Miller Faucher to serve as liaison counsel for the class. (R. 32, Pontiac Group Mem. at 9.) We have already found that Lerach Coughlin will adequately represent the purported class. (*See* pp. 5-6, *supra*.) We therefore approve the Pontiac Group's selection of counsel.

## CONCLUSION

For the reasons set forth above, we grant the Pontiac Group's motion for appointment as lead plaintiff and approval of lead plaintiff's choice of counsel. (R. 28-1). The motions for appointment as lead plaintiff and approval of counsel filed by the Johnson Group, DALI, and the Ponzo Group are denied. (R. 18-1; R. 22-1; R. 29-1.) This case is set for a status hearing on July 19, 2005 at 9:45 a.m.

ENTERED:

Judge Ruben Castillo
United States District Court

**Dated: July 6, 2005**